UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE AMY ST. EVE

**15CR 314**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No.     **MAGISTRATE JUDGE COLE** |
| v. | ) | |
| | ) | Violation: Title 26, United States |
| DANIEL P. SOSO | ) | Code, Section 7201 |

**FILED**

THE SPECIAL JULY 2013 GRAND JURY charges:

MAY **2 8** 2015
May 28, 2015
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

1.     At times material to this indictment:

Entities and Individuals

a.     Defendant DANIEL P. SOSO was an attorney licensed to practice

law in the State of Illinois.

b.     Individual A was an attorney licensed to practice law in the State

of Illinois until in or around 2009.   Individual A was the manager of Law Firm A.

c.     Individual B was an attorney licensed to practice law in the State of

Illinois.   Individual B was a partner in a law firm, Law Firm B, which maintained law

offices in the State of Washington.

d.     The Attorney General of the State of Illinois was the chief legal

officer of the State of Illinois and had the authority to initiate lawsuits on behalf of the

State of Illinois and its people.

## The Tobacco Lawsuit

e.       On or about October 9, 1996, the Attorney General entered into a written contract with several law firms, including Law Firm B.   Pursuant to the contract, members of these law firms were to be appointed by the Attorney General to act as Special Assistant Attorneys General who would represent the State of Illinois in its anticipated lawsuit against certain tobacco companies to recover, among other things, money damages incurred by the State of Illinois as a result of the sale of tobacco products to residents of the State of Illinois.   In addition, the contract provided that the law firms representing the State of Illinois, including Law Firm B, would share a "contingent fee" equal to ten percent of the total monetary recovery realized by the State of Illinois in its planned lawsuit.   A contract concerning the retention of local counsel was also approved and ratified by the Attorney General.

f.       SOSO and Individual A were not appointed as Special Assistant Attorneys General and were not authorized to perform any work for the State of Illinois on the lawsuit against the tobacco companies.

g.       On or about November 12, 1996, the State of Illinois filed a lawsuit against the tobacco companies in the Circuit Court of Cook County, bearing the title and case number *People of the State of Illinois v. Phillip Morris, Inc. et al.*, No. 96 L 13146, seeking, among other things, money damages.

2

### SOSO's Receipt of Fees from the Tobacco Lawsuit

h.      In or around November 1998, the State of Illinois entered into a written agreement, known as the "Master Settlement Agreement," that resolved the tobacco lawsuit.   Pursuant to the Master Settlement Agreement, the State of Illinois was projected to receive a total of over $9 billion in payments from the settlement of the case, to be made on a quarterly basis over a period of more than two decades.

i.      SOSO, Individual A, and Individual B entered into agreements to pay SOSO and Individual A a portion of the attorney fees awarded in the tobacco lawsuit and concealed these agreements from the State of Illinois, the Attorney General and others.   Those agreements included the following:

(1)      On or about October 8, 1996, Individual B sent SOSO a letter on Law Firm B letterhead, with a copy to Individual A, stating as follows: "This will confirm that with respect to any contingent fee that is awarded to us in the Illinois Tobacco litigation, if we are successful in being retained and in prosecuting the case, your share will be 2-1/2% of that contingent fee."

(2)      On or about May 12, 1999, Individual B sent Individual A a letter on Law Firm B letterhead, which stated: "As to the fees to be awarded in the Illinois tobacco litigation, we agree that you will receive ten percent of national counsel's fees."

(3)      On or about May 24, 1999, SOSO and Individual A entered into a written agreement that provided SOSO "shall receive a total of three and one half (3 1/2) points, representing two and one half (2 1/2) points of Soso's original points

3

pursuant to a prior agreement with outside counsel, and one (1) point from [Individual A] in the event [Individual A] receives the agreed upon points from outside counsel."

     j.     Beginning no later than in or around 1999 and continuing until in or around April 2007, Individual B caused payments to be made to Individual A or Individual A's designee, Law Firm A, that included amounts payable to Individual A pursuant to the 05/12/99 Agreement as well as amounts payable to SOSO for amounts due to SOSO pursuant to the 10/08/96 Agreement and the 05/24/99 Agreement.

     k.     Beginning no later than in or around 2000 and continuing until at least in or around August 2005, Individual A made payments to SOSO for amounts due to SOSO under the 10/08/96 Agreement and the 05/24/99 Agreement.

### IRS Notices of Levy

     l.     The Internal Revenue Service was an agency of the United States Department of Treasury, responsible for administering and enforcing the tax laws of the United States. Under these laws, individuals were required to accurately report income to the IRS on income tax return forms and pay all personal income tax and tax penalties due and owing.

     m.     In order to collect amounts due and owing from a taxpayer who had failed to pay amounts due to the IRS, the IRS was permitted to serve a notice of levy on other individuals. An individual receiving a notice of levy was required to turn over to the IRS any income of the non-paying taxpayer in their possession or for which they were obligated. At the time a notice of levy was received, it attached to all obligations

4

owed to the non-paying taxpayer, even if payment on an obligation was to be made to the non-paying taxpayer at a later date.

2.     For each calendar year listed in the chart below, SOSO reported to the IRS the following approximate amount of tax due, paid the following approximate amount of tax, and owed the following approximate amount of tax due:

| Year | Tax Reported | Tax Paid | Tax Due |
|---|---|---|---|
| 1993 | $4,780.39 | $1,438.00 | $3,342.39 |
| 1994 | $2,220.49 | $0 | $2,220.49 |
| 1995 | $1,113.40 | $0 | $1,113.40 |
| 1996 | $14,420.53 | $0 | $14,420.53 |
| 1997 | $4,773.84 | $0 | $4,773.84 |
| 1998 | $3,029.79 | $0 | $3,029.79 |
| 1999 | $4,763.00 | $0 | $4,763.00 |
| 2000 | $40,999.00 | $0 | $40,999.00 |
| 2001 | $32,982.00 | $0 | $32,982.00 |
| 2002 | $28,072.00 | $0 | $28,072.00 |
| 2003 | $159,664.72 | $0 | $159,664.72 |

| Year | Tax Reported | Tax Paid | Tax Due |
|---|---|---|---|
| 2004 | $155,308.71 | $0 | $155,308.71 |
| 2005 | $140,472.00 | $139,000.00 | $1,472.00 |
| 2006 | $400.66 | $1,951.00 | ($1,550.34) |
| 2007 | $9,079.00 | $9,079.00 | $0 |
| 2008 | $91,630.00 | $12,890.00 | $78,740.00 |
| 2009 | $62,878.36 | $0 | $62,878.36 |
| 2010 | $32,942.00 | $3,000.00 | $50,602.00 |
| 2011 | $33,299.00 | $0 | $69,688.00 |
| 2012 | $32,797.97 | $0 | $32,797.97 |
| 2013 | $34,298.00 | $0 | $34,298.00 |
| Totals | $889,924.86 | $167,358.00 | $779,615.86 |

3.      SOSO's tax due as set forth in paragraph 2 included tax due on income SOSO received between calendars years 2000 and 2013 pursuant to the 10/08/96 Agreement and the 05/24/99 Agreement.

4.      Because SOSO failed to pay income tax due and owing to the IRS, the IRS initiated efforts to collect amounts owed by SOSO by making demands for payment to

SOSO, serving notices of levy, filing tax liens against SOSO, and obtaining information from SOSO about his sources of income.

5.      On or about August 6, 2005, Individual A was served with a notice of levy, and in or around April 2006, Individual A was served with another notice of levy, both of which required Individual A to turn over to the IRS money that Individual A owed to SOSO.

6.      SOSO did not timely file a personal income tax return for the calendar years 2008, 2009, 2010, 2011 and 2012, and filed these returns in 2014, after learning about a federal law enforcement inquiry concerning SOSO.

7.      Beginning no later than approximately 2003 and continuing through in or around 2015, in the Northern District of Illinois, Eastern Division, and elsewhere,

DANIEL P. SOSO,

defendant herein, did willfully attempt to evade and defeat the payment of income tax due and owing by SOSO to the United States for the calendar years 1993, 1994, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2008, 2009, 2010, 2011, 2012, and 2013, by committing the following affirmative acts, among others:

a.      Beginning no later than in or around 2003 and continuing through in or around 2015, SOSO caused payments made to SOSO, including payments made pursuant to the 10/08/96 Agreement and the 05/24/99 Agreement, to be deposited in bank accounts held in the name of third parties, including bank accounts used by SOSO's relatives and girlfriend, and SOSO further caused money to be disbursed from these accounts in order to pay his own expenses and the expenses of others.

b.     Beginning no later than in or around July 2007 and continuing through in or around 2015, SOSO caused Law Firm B to send payments owed to SOSO pursuant to the 10/08/96 Agreement to SOSO or SOSO's designee rather than to Individual A, who had been served by the IRS with the notices of levy.

c.     Beginning no later than in or around 2007 and continuing through in or around 2014, SOSO (i) caused Individual C and Individual D to provide him with credit cards that were issued under accounts opened in their names; (ii) used these credit cards to pay for his personal expenses; and (iii) reimbursed Individual C and Individual D for his use of their credit card accounts.

d.     On or about August 1, 2008, SOSO made a false statement, signed under penalty of perjury, to the IRS on a Form 433-A (Collection Information Statement for Wage Earners and Self-Employed Individuals), in which SOSO failed to declare receivables due to SOSO pursuant to the 10/08/96 Agreement and the 05/24/99 Agreement, and falsely stated that his monthly gross receipts from business were $2,300, when in fact SOSO (i) had already received approximately $119,363 in payments in 2008 pursuant to the 10/08/96 Agreement, (ii) expected to continue receiving quarterly payments pursuant to the 10/08/96 Agreement, and (iii) was owed money by Individual A pursuant to the 05/24/99 Agreement.

e.     On or about August 17, 2008, SOSO caused the IRS to be provided with a list of accounts receivable due to SOSO, which list of receivables was false in that it totaled approximately $10,830 and omitted all amounts due to SOSO pursuant to the 10/08/96 Agreement and the 05/24/99 Agreement.

f.     On or about February 11, 2014, SOSO falsely reported his income in his untimely personal income tax return for the year 2011.

g.     On or about March 14, 2014, SOSO falsely reported his income in his untimely personal income tax return for the year 2010.

In violation of Title 26, United States Code, Section 7201.

A TRUE BILL

_____

FOREPERSON

_____

UNITED STATES ATTORNEY

9